**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| SUSAN FLANDER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. H-12-713 |
| | § | |
| KFORCE INC., ROBYN DYCK, | § | |
| JIM SYKES, and JP MORGAN CHASE, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION FOR DISMISSAL**

This matter was referred by United States District Judge Lee H. Rosenthal, for full pre-trial management, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket Entry #20). In this lawsuit, Plaintiff Susan Flander ("Plaintiff," "Flander") brings claims against Defendants Kforce Inc. ("Kforce"), Robyn Dyck ("Dyck"), Jim Sykes ("Sykes"),[1] and JP Morgan Chase ("JPMC") (collectively, "Defendants"). Each of her claims arises from Defendants' purported use of criminal background information in denying Flander employment at JPMC. Pending before the court are two motions, filed by Plaintiff, seeking judgment against Defendants for failing to respond to her complaint, and citing the absence of evidence in the record to rebut her claims. (Request for Summary Judgment ["Plaintiff's Summary Judgment Motion"], Docket Entry #27; Motion for Default ["Plaintiff's Default Motion"], Docket Entry #44).

Also pending are motions to dismiss, filed by Defendants Kforce and Dyck. (Kforce Inc.'s Motion to Dismiss ["Kforce's Motion"], Docket Entry #32; Defendant Robyn Dyck's Motion to Dismiss Plaintiff's Complaint ["Dyck's Motion"], Docket Entry #33). Flander has responded in opposition to these motions. (Response ["Plaintiff's Response"], Docket Entry #38). Flander has also filed a document titled "Motion to Quash," which appears to be an additional response to the

---

[1] In the pleadings, "Jim Sykes" is alternatively referred to as "Jim Sikes." Neither JPMC nor Sykes has appeared in this lawsuit, and the correct spelling cannot be gleaned from the current record. (*See* Supplements, Docket Entry #51).

motions to dismiss, as well as a supplement to her motion for a default judgment.[2] (Motion to Quash ["Plaintiff's Supplement"], Docket Entry #37). For the reasons that follow, it is RECOMMENDED that Plaintiff's motion for summary judgment, motion for a default judgment, and motion to quash be DENIED, that Defendants Kforce's and Dyck's motions to dismiss be GRANTED, and that this action be DISMISSED, with prejudice, against all Defendants.

**Background**

In early 2012, Plaintiff Susan Flander applied for a temporary job as a technical writer for Defendant JP Morgan Chase. (Complaint, Docket Entry #3, at 3-6). On January 26, 2012, she received a response, by email, from Defendant Robyn Dyck, informing her that an interview had been scheduled for January 28 of that year. (*Id*. at 3). Dyck is a "talent representative" for Defendant Kforce, a staffing company used by JPMC to recruit employees. (*Id*.; Kforce's Motion at 2 & Exhibit ["Ex."] A). Apparently the interview was successful, as Flander was given a possible start date of February 6, 2012. (Complaint at 3). However, Flander was made aware that her employment was contingent, in part, on the results of a background check and a "fingerprint search." (Supplements, Docket Entry #50-2). On February 3, 2012, Dyck sent Flander an email, informing her that she no longer had a potential "start date" of "Monday, Feb 6th," because her employment

was "pending paperwork approval." (Complaint at 3). Dyck further informed Plaintiff of the following matters:

> JPMC is working with us to complete the process. As soon as I hear from them, I will let you know. I apologize for the delay. It is my hope to get you started on Tuesday Feb 7th.

(*Id*.). As part of the "process" Dyck was referencing, Flander was contacted by Defendant Jim Sykes, a pre-employment screener for JMPC. (*Id*. at 3-6; *see* Docket Entry #10). On February 6,

---

[2] Plaintiff has also filed several supplements and exhibits in support of her arguments. (Supplements, Docket Entries #39, #42, #47, #48, #49, #50, #51, #53, #54).

2012, following a conversation between Flander and Sykes,[3] Dyck sent her the following information:

> The group you will support within JPMC has a global presence and as you are aware, the information you will be working with is extremely sensitive and secure. If your background or fingerprints do not come back clean, then the matter is out of [Kforce's] control regarding your employment with [JPMC].

(Complaint at 4).

On February 8, 2012, Dyck sent Flander an email telling her that JPMC was not prepared to "clear [her] for employment," for the following reasons:

> As you discussed with Jim Sikes, JPMC will not clear you for employment until the outcome of your court date occurs. In the event that you have further questions about the information requested, please reach out to Jim Sikes to discuss this matter in detail. JPMC will not divulge personal or secure information regarding your background to us, so therefore we cannot inquire about the nature of the outcome they are requesting from you. As you can imagine, this is a time sensitive matter and at some point we will run out of time for this opportunity.

(*Id.* at 6; Kforce's Motion at 2-3). Finally, on February 16, 2012, Dyck sent an email informing Flander that JPMC had decided not to hire her:

> Good afternoon. I've tried to reach you several times to no avail. I called and left a message for you this afternoon, on your phone, regarding JPMC. As mentioned, we were informed that JPMC Security did not receive any information or calls from you pertaining to the documents requested, as discussed between you and them. This being [sic], I regret to inform you that JPMC is not going to move forward with employment.

(Supplements, Docket Entry #50-1).

On February 21, 2012, Flander, proceeding *pro se*, filed this lawsuit in the United States District Court for the Northern District of Texas. It was subsequently transferred to this court. (Transfer Order, Docket Entry #12, at 1). In her Complaint, Flander accuses Defendants of violating United States Department of Justice Order #556-73, and other procedures, that are required to obtain and use criminal background information and fingerprint search results. (Complaint at 2-3). Flander

---

[3] From this record, the exact content of that conversation cannot be discerned.

3

claims that her civil rights were violated under 42 U.S.C. §§ 1983, 1985, and 1986, as well as under Title VII ("Title VII") of the Civil Rights Act of 1964. (*Id*. at 2-5, 7). On February 23, 2012, United States Magistrate Judge Jeff Kaplan ("Judge Kaplan"), of the Northern District of Texas, sent Plaintiff a questionnaire, seeking clarification of the grounds for her lawsuit. (Docket Entry #9). In her response to the questionnaire, Flander describes her claim, as follows:

> The results I want to achieve are fair employment standards for women who have been victims of violence regardless of conviction on misdemeanor family violence-simple assault cases.
>
> No woman after ten years of "positive growth" should be thrown back into a criminal system and denied housing, employment, or health care because of old arrest records or no disposition cases.
>
> KFORCE and JP Chase Morgan [sic] used dismissed cases and no disposition cases to deny employment. I have had a successful employment history previously.
>
> I feel I should be compensated for my time and travel to Houston, TX for interviews, drug screening, Federal fingerprinting, and release of privately held records into Sterling Background Company's[4] databases at the sum of $100,000.00.

(Plaintiff's Answers to Magistrate Judge's Questionnaire to the Plaintiff ["Questionnaire"], Docket Entry #10, at 19). Also in response to the questionnaire, Flander identified "Robyn Dyck-KFORCE" and "Jim Sykes-JP Morgan Chase" as Defendants. (*Id*. at 20). She alleges that these Defendants violated her rights under Title VII by discriminating against her because of her gender, and by retaliating against her because of her past criminal history. (*Id*. at 20, 24). She contends, specifically, that Dyck violated her Title VII rights by the following conduct:

> placing me in contact with personnel that were not my employers and requesting that I provide them with information on State dismissed, disposed, and/or sealed cases outside of Federal Procedures that are to be followed and are a requirement of Financial Institutions for missing disposition information in background screens.

(*Id*. at 22). Likewise, she alleges that Sykes violated her Title VII rights by improperly pursuing such information. (*Id*. at 23). Flander also claims that Sykes, whom she refers to as a "public

---

[4] Plaintiff has not sued Sterling Background Screening Company, and she does not explain the role it might have had in Defendants' alleged wrongdoing.

4

servant," and Dyck violated 42 U.S.C. §§ 1983, 1985, and 1986 by "br[eaking] federal procedures in the obtainment of dispositions on state dismissed, disposed, no disposition and/or sealed criminal record," leading to the refusal to employ her. (*Id*. at 20-22). She also complains of the following actions:

> conspir[ing] with KFORCE Human Resource staff, Sterling Background Screening Company, and Jim Sykes-JP Chase Morgan [sic] to deny employment ... and [to] distribute information that would interfere with an in-court proceeding cases [sic] or future employment.

(*Id*.). Flander never makes clear what, precisely, may have been in her background information that lead to JPMC's decision not to hire her. She does, however, state that it involved "an arrest record with no conviction" and "a Family Violence case in litigation." (Complaint at 2, 5; *see* Questionnaire, Docket Entry #10 [alternatively referring to the matter as "[s]tate dismissed, disposed, and/or sealed cases"]).

On March 5, 2012, after reviewing the complaint and the answers to his questionnaire, Judge Kaplan summarized Plaintiff's claims, as follows:

> As best the court can decipher her complaint and interrogatory answers, plaintiff appears to allege that defendants conspired with one another to deny her employment with Chase by relying on outdated and inaccurate information obtained during a background investigation.

(Transfer Order at 1). The judge noted that Flander also "sues for gender discrimination and retaliation under Title VII." (*Id*.). Judge Kaplan determined, as well, that the case had "no connection to the Northern District of Texas." (*Id*. at 1-2). For that reason, he transferred the litigation to this court. (*Id*.).

On March 14, 2012, this court granted Plaintiff's application to proceed *in forma pauperis*, and, on June 25, 2012, she received an order reminding her that Defendants had not yet been served. (Docket Entries #15, #21). The court ordered Flander to properly serve Defendants "within 14 days from the date this order is entered," and cautioned her that "[f]ailure to comply may lead to dismissal of this action against all Defendants" under Rule 4(m) of the Federal Rules of Civil Procedure. (*Id*.).

5

On June 29, 2012, Plaintiff used the court's electronic filing system to file a motion to reset the initial pretrial conference, and within that motion, stated that she was attaching two copies of a "summons" "in response to the ... order by the court filed on June 25, 2012." (Docket Entry #22). The attached "summons" was a partially completed, unsigned form for a "Summons in a Civil Action," purporting to notify Defendants of the lawsuit. (*Id.* at Ex. 3, 4). The next day, Plaintiff filed with the court a self-styled "Certificate of Service," stating that she had served Defendants by "[e]-filed document." (Docket Entry #23). On August 11, 2012, Plaintiff "request[ed] a status of the case," and represented that Defendants had not responded to her summons. (Docket Entry #25). Two weeks later, she filed a motion for default judgment on the grounds that Defendants had not answered her Complaint. (Docket Entry #27). On September 10, 2012, the court issued an order "that the United States Marshal[s] Service shall personally serve a copy of the summons, complaint and a copy of this order" on "KForce-Robyn Dyck" and "JP Morgan Chase-Jim Sykes." (Docket Entry #28). On September 17, 2012, Robyn Dyck was personally served, and proof of service was filed with the court. (Docket Entry #31). Service was also attempted on Sykes, but the summons was returned to the court, on September 12, 2012, "unexecuted because subject does not work or live [at] given address." (Docket Entry #30). Plaintiff has made no further attempts to effect proper service on JPMC or Sykes.

On October 9, 2012, Kforce and Dyck each filed a motion to dismiss based on improper service and failure to state a claim. Kforce also argues that "[i]t is unclear from a facial review of the Complaint whether Plaintiff intended to assert one or more claims against only Defendant Robyn Dyck, or whether she intended to include Kforce (*i.e.*, a corporate entity) as a party in this lawsuit as well." (Kforce's Motion at 6-7). Both parties also claim that dismissal is appropriate under 28 U.S.C. § 1915(e)(2)(B), a statute that permits the dismissal of lawsuits deemed groundless or vexatious. (*Id.* at 6, 13-14; Dyck's Motion at 15-16). On September 1, 2012, and October 15, 2012, respectively, Flander filed a "request for summary judgment" and a motion for a default judgment.

6

In both motions, Plaintiff seeks judgment in her favor based on Defendants' alleged failure to respond to the summons, and the absence of evidence in the record to rebut her claims. In her motion for a default judgment, Plaintiff also questions whether Michael Royal ("Royal"), the attorney for Kforce and Dyck, and Royal's firm, Fisher & Phillips LLP, are properly before the court.[5] (Plaintiff's Default Motion at 1; Supplements, Docket Entries #47, #49). On October 11, 2012, Flander filed a "motion to quash," which appears to be both a response to the motions to dismiss and a supplement to her motions for judgment.

Having reviewed the pleadings and the applicable law, the court recommends that Plaintiff's motions be denied, that Kforce's and Dyck's motions be granted, and that this action be dismissed, against all Defendants, for the reasons set out in this memorandum.

**Standard of Review**

Under Rule 12(b) of the Federal Rules of Civil Procedure, in lieu of an answer, defendants may file a motion to dismiss for one or more enumerated reasons. *See* FED. R. CIV. P. 12(b); *Quantlab Tech. Ltd. (BVI) v. Godlevsky*, 719 F. Supp. 2d 766, 777 (S.D. Tex. 2010) (Ellison, J.). Among those reasons are "insufficient process" and "insufficient service of process." FED. R. CIV. P. 12(b)(4), (5). The proper method of effecting service is set out, in detail, in Rule 4 of the Federal Rules. Another Rule 12(b) defense is "failure to state a claim upon which relief may be granted." *Id*. at Rule 12(b)(6). In considering a Rule 12(b)(6) motion, the court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)); *accord In Re McCoy*, 666 F.3d 924, 926

---

[5] Plaintiff does not clearly identify her concerns about Royal and his law firm. In one of her supplemental pleadings, however, Flander points to a passage from an online article, that describes Fisher & Phillips as a firm that handles public and private matters in state and federal courts, as evidence that the firm may have a connection to her criminal proceedings that poses a conflict here. (Supplements, Docket Entry #47 [citing AMERICAN BANKING & MARKET NEWS, *http://www.americanbankingnews.com/ 2012/08/26/fisher-phillips-partners-michael-v-abcarian-and-michael-p-royal-named-to-the-best-lawyers-in-america-2013-list/*]). In another supplement, Flander also complains that Royal has not filed "a notice of appearance of counsel" in this case. (Supplements, Docket Entry #49).

(5th Cir. 2012). The court, however, need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009). Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)); *accord Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). A claim is facially plausible "'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). The standard of plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678-79; *accord Wilson*, 667 F.3d at 600. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *PSKS, Inc. v. Leegin Creative Leather Prods., Inc*., 615 F.3d 412, 417 (5th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). In such a case, the complaint is subject to dismissal under Rule 12(b)(6). *See id*.

**Discussion**

As a matter of course, the first issue to be addressed is whether Defendants have been properly served with Flander's Complaint. "A federal court is without personal jurisdiction over a defendant unless the defendant has been served with process in accordance with Federal Rule of Civil Procedure 4," or has waived service. *Naranjo v. Universal Sur. of Am.*, 679 F. Supp. 2d 787, 795 (S.D. Tex. 2010) (Jack, J.) (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co*., 484 U.S. 97, 104 (1987)). Because "'[j]urisdiction is power to declare the law, and [w]ithout jurisdiction the court cannot proceed at all in any cause,'" it is a threshold matter. *Pervasive Software Inc. v. Lexware GmbH & Co*. KG, 688 F.3d 214, 232 (5th Cir. 2012) (quoting *Ruhrgas AG v. Marathon Oil Co*., 526 U.S. 574, 577 (1999)); *accord Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). As a consequence, if the court lacks personal jurisdiction, that may serve as "'grounds for

8

denying audience to a case on the merits.'" *Pervasive Software Inc.*, 688 F.3d at 232 (quoting *Ruhrgas AG*, 526 U.S. at 584-84). In this case, then, the court cannot proceed to adjudicate claims against any defendant who has not been properly served, unless there has been a waiver of the service requirement. *See Naranjo*, 679 F. Supp. 2d at 795.

Under the Federal Rules, once a plaintiff has filed a complaint, she has 120 days to serve all defendants, and to show proof of that service to the court. *See* FED. R. CIV. P. 4(l)(1), (m). Rule 4 also provides, as follows:

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.

*Id.* at Rule 4(m). In this case, because Plaintiff filed the Complaint on February 21, 2012, she had until June 20, 2012, to effect proper service. *See id.* Indeed, on March 7, 2012, after the case was transferred to this court, Plaintiff was instructed on a variety of matters, including service:

> Fed. R. Civ. P. 4(m) requires defendant(s) to be served within 120 days after the filing of the complaint. The failure of plaintiff(s) to file proof of service within 120 days after the filing of the complaint may result in the dismissal of this action by the court on it own initiative.

(Docket Entry #14, at ¶8; *see* Docket Entry #19 [showing that Flander read the order on or before March 20, 2012]). Despite this reminder, Plaintiff did not serve Defendants, or request the court to appoint someone to do so. As a result, the court could have dismissed this case after June 20, 2012. *See* FED. R. CIV. P. 4(m).

Instead, however, on June 25, 2012, the court issued a second order to remind Flander of her obligation to serve Defendants, and it gave her additional time to effect proper service on all Defendants "within 14 days from the date this order is entered." (Docket Entry #21). The court also referred Plaintiff to Rule 4 of the Federal Rules of Civil Procedure, and, once again, cautioned that "[f]ailure to comply may lead to dismissal of this action against all Defendants." (*Id.*). On June 29, 2012, Plaintiff filed copies of an unsigned summons through the court's electronic filing system,

9

presumably believing that she could accomplish service in that way. (Docket Entries #22, #23). Unfortunately, Rule 4 does not provide for service in that manner, but places the burden on the plaintiff to ensure that Defendants are served. *See* FED. R. CIV. P. 4(c). Although Flander is proceeding without counsel,[6] the Fifth Circuit has made clear that "*[p]ro se* status and ignorance of the relevant rules of service do not excuse a plaintiff's failure to effect service." *Bartz v. Adrian*, 169 Fed. Appx. 241 (5th Cir. 2006) (citing *Kersh v. Derozier*, 851 F.2d 1509, 1512 (5th Cir. 1988)); *see Propes*, 573 F.3d at 231 (citing *United States v. Petty*, 530 F.3d 361, 365-66 (5th Cir. 2008)). In this case, Plaintiff did not effect service on Defendants by the court ordered deadline of July 9, 2012. So, as of that date, Plaintiff's case was once again subject to dismissal for untimely service. *See* FED. R. CIV. P. 4(m).

But rather than dismiss the action, the court treated the case as if Plaintiff had requested a court-appointed server. *See id.* at Rule 4(c)(3). On September 10, 2012, the court ordered the U.S. Marshals Service to "personally serve a copy of the summons, complaint and a copy of this order" on "Kforce-Robyn Dyck" and "JPMorgan Chase-Jim Sykes." (Docket Entry #28). On September 17th, the Marshals Service personally delivered the summons and complaint to "KForce-Robyn Dyck." (Docket Entry #31). The Marshals were unable, however, to serve "JPMorgan Chase-Jim Sykes" because Sykes did not work or reside at the address given. (Docket Entry #30). To date, neither JPMC nor Sykes has been served, and neither has made an appearance in this action. Under these circumstances, Plaintiff's claims against JP Morgan Chase and Jim Sykes should be dismissed, under Rule 4(m) of the Federal Rules of Civil Procedure, for failure to effect timely service. *See* FED. R. CIV. P. 4(m).

---

[6] It is well settled that when a plaintiff is proceeding *pro se*, "the court must afford her pleadings a liberal construction." *Propes v. Quarterman*, 573 F.3d 225, 228, 231 (5th Cir. 2009).

*Kforce's Motion to Dismiss*

In its motion, Kforce moves to dismiss Plaintiff's claims "for insufficient process under Federal Rule of Civil Procedures 12(b)(4) and/or alternatively, for insufficient service of process under Rule 12(b)(5), and untimely service under Rule 4(m)." (Kforce's Motion at 6). Kforce points out that it is unclear whether Plaintiff actually intended to sue the corporation and Robyn Dyck, or only Dyck, because she repeatedly identifies Defendants as "Robyn Dyck-Kforce." (*Id.* at 6-7). Whether Plaintiff intended to sue Kforce as a corporation, though, it is clear from the return of service that only "Robyn Dyck" was served. (Docket Entry #31). For that reason, Plaintiff's claims against Kforce are subject to dismissal under Rule 4(m). Further, the Federal Rules of Civil Procedure contain specific requirements for serving corporations, none of which was met here. Under Rule 4, for instance, a corporation may be served by delivery of the summons and complaint "to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." FED. R. CIV. P. 4(h)(1)(B). Rule 4 also provides that a corporation may be served pursuant to state law which, in Texas, also allows for service to the corporation's "president and each vice president," or on the secretary of state if "the registered agent of the entity cannot with reasonable diligence be found at the registered office of the entity." TEX. BUS. ORGS. CODE ANN. §§ 5.201, 5.251(1), 5.255 5.251 (West 2011); *see* FED. R. CIV. P. 4(e)(1), h(1). In an affidavit, William Josey ("Josey"), Kforce's general counsel, states that Dyck has never been an officer or agent authorized to receive service of process on behalf of Kforce. (Kforce's Motion at Ex. A). Josey also states that CT Corporation, located in Dallas, Texas, is Kforce's "sole registered agent for service in the State of Texas," and that its agent has not been served in this action. (*Id.*). Because Kforce has not been served, then, Flander's claims against it should be dismissed, under Rule 12(b)(5), for insufficient service of process.

*Plaintiff's Motions*

In her own motions, Plaintiff seeks judgment in her favor based, in large part, on Defendants' failure to respond. (Docket Entries #27, #37, #44). Clearly, because neither JPMC, Sykes, nor Kforce were properly served, none had a duty to respond to her claims. *See* FED. R. CIV. P. 12(a)(1) (only requiring a responsive pleading after service or waiver of service). On the other hand, Dyck was served with process and, so, was required to respond in an appropriate fashion. *See id*. at Rule 12(a), (b). On October 9, 2012, Dyck filed a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules. (Docket Entry #33). Under the Federal Rules of Civil Procedure, a defendant may file a motion to dismiss under Rule 12(b)(6) in lieu of an answer within 21 days of service. *See* FED. R. CIV. P. 12(a)(1)(A)(i), (b), (h)(1); *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999); *Godlevsky*, 719 F. Supp. 2d at 777. Dyck acted properly by filing her Rule 12(b)(6) motion within the designated time period.[7] *See* FED. R. CIV. P. 12(a)(1)(A)(i), (b). For these reasons, Plaintiff's motions for judgment based on Defendants' failure to respond have no merit, and should be denied.

*Dyck's Motion*

In this lawsuit, Plaintiff contends that Dyck failed to comply with United States Department of Justice Order #556-73, and like procedures, in obtaining criminal background information and performing a "fingerprint search." (Complaint at 2-3). In particular, Flander claims that Dyck is liable for "br[eaking] federal procedures in the obtainment of dispositions on state dismissed, disposed, no disposition and/or sealed criminal record[s]," which lead to JPMC's decision not to hire her. (*Id*. at 20, 22). Flander also accuses Dyck of the following:

---

[7] The court notes that October 8, 2012, was 21 days after service, and that Dyck filed her motion on October 9, 2012. However, October 8, 2012, was Columbus Day, which is a federal holiday. *See* FED. R. CIV. P. 6(a)(1)(C), (a)(6). Because of the federal holiday, Dyck had until October 9, 2012, to file her motion. *See id*.

12

> conspir[ing] with KFORCE Human Resource staff, Sterling Background Screening Company, and Jim Sykes-JP Chase Morgan [sic] to deny employment ... and [to] distribute information that would interfere with an in-court proceeding cases [sic] or future employment.

(*Id.*). Plaintiff alleges that Dyck is liable for this conduct under 42 U.S.C. §§ 1983, 1985, and 1986, as well as Title VII. From the pleadings, however, it is clear that Flander has failed to state a claim under any of those laws.

At the outset, it must be emphasized that § 1983 applies only to conduct by state actors, or by those whose actions are attributable to the state. *See* 42 U.S.C. § 1983; *Wyatt v. Cole*, 504 U.S. 158, 161-62 (1992); *Doe ex rel. Magee v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 886 (5th Cir. 2012); *Rundus v. City of Dallas, Tex.*, 634 F.3d 309, 312-15 (5th Cir. 2011). Here, Plaintiff has made no allegations that Dyck, a talent representative for a private staffing company, is a state actor. Nor has she explained how Dyck's conduct could, in any way, be attributed to the state. As a result, Plaintiff has not, and cannot, state a claim against Dyck under § 1983. *See id.*

Further, while § 1985 can be applied to private actors, to succeed on a claim under this statute, a plaintiff must show proof of a conspiracy that was motivated by a class-based animus. *See* 42 U.S.C. § 1985(3); *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68 (1993); *Benningfield v. City of Houston*, 157 F.3d 369, 379 (5th Cir. 1998); *Hilliard v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994). In this case, the only "class-based animus" that Plaintiff references is in a Title VII claim for sex discrimination. (*See* Complaint at 2-5, 7). Those allegations are limited to the following:

> The results I want to achieve are fair employment standards for women who have been victims of violence regardless of conviction on misdemeanor family violence-simple assault cases.

> No woman after ten years of "positive growth" should be thrown back into a criminal system and denied housing, employment, or health care because of old arrest records or no disposition cases.

13

> KFORCE and JP Chase Morgan [sic] used dismissed cases and no disposition cases to deny employment. I have had a successful employment history previously.
>
> I feel I should be compensated for my time and travel to Houston, TX for interviews, drug screening, Federal fingerprinting, and release of privately held records into Sterling Background Company's databases at the sum of $100,000.00.

(Questionnaire at 19; *see* Complaint at 2-5, 7). None of Plaintiff's allegations suggest that there was a "conspiracy," or that this conspiracy was motivated by the fact that Plaintiff is female. (*See* Questionnaire at 19). As a result, Plaintiff has not stated a claim under § 1985(3) for a conspiracy motivated by sex-based animus. Indeed, Plaintiff appears to be alleging that Defendants conspired against her, in violation of § 1985(3), due to her purported "conviction on misdemeanor family violence-simple assault cases," or "old arrest records or no disposition cases." (*See id.*). However, those are not among the "protected classes" protected by § 1985, such as race, sex, and national origin. *See, e.g.*, *Chamber of Commerce of U.S. v. Whiting*, ___ U.S. ___, 131 S. Ct. 1968, 1984 (2011) (concerning Title VII); *McDonald v. City of St. Paul*, 679 F.3d 698, 706-07 (8th Cir. 2012) (concerning § 1985); *Galloway v. Louisiana*, 817 F.2d 1154, 1159 (5th Cir. 1987) (concerning § 1985(3)); *see also Hamill v. Wright*, 870 F.2d 1032, 1037-38 (5th Cir. 1989). Plaintiff has not made any allegations which, taken as true, support a claim that Dyck was motivated by animosity towards Flander's sex, or towards any other protected class in which she can claim membership. *See Wilson*, 667 F.3d at 595. Here, then, Plaintiff has failed to state a claim under § 1985.[8]

Additionally, because Plaintiff has failed to state a claim under § 1985, she has no claim under § 1986. *See Lockett v. New Orleans City*, 607 F.3d 992, 1002 (5th Cir. 2010); *Bryan v. City of Madison, Miss.*, 213 F.3d 267, 276 (5th Cir. 2000); *Newberry v. East Tex. State Univ.*, 161 F.3d 276, 281 n.3 (5th Cir. 1998); *Galloway*, 817 F.2d at 1159 n.2. Section 1986 applies to persons who

---

[8] It is also well established that, "[t]o the extent [a party's] claims stem from Title VII, [she] may not use § 1985(3) as a remedy." *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 270 (5th Cir. 2001).

knew "that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, [we]re about to be committed," but who took no action to prevent it. *See* 42 U.S.C. § 1986. The Fifth Circuit has held that "a valid § 1985 claim is a prerequisite to a § 1986 claim." *Bryan*, 213 F.3d at 276 (citing *Newberry*, 161 F.3d at 281 n.3); *accord Lockett*, 607 F.3d at 1002. Accordingly, "[h]aving failed to demonstrate a claim under § 1985, by definition [Flander] cannot sustain a claim under § 1986." *See id.* (citing *Galloway*, 817 F.2d at 1159 n.2).

Further, to state a claim for sex discrimination under Title VII, Flander must show that Dyck's actions were motivated, at least in part, by her gender. *See Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). As detailed earlier, she has not done so in her Complaint. For that reason, Flander has failed to state a claim for gender discrimination in employment, under Title VII. *See id.*; *Tanik v. Southern Methodist Univ.*, 116 F.3d 775, 775-76 (5th Cir. 1997).

Finally, to establish "a *prima facie* case of retaliation," Plaintiff must show that (i) she "engaged in a protected activity"; (ii) that "an adverse employment action occurred"; and (iii) that "there was a causal link between the protected activity and the adverse employment action." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012) (citing *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 523 (5th Cir. 2008)); *accord Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000). Under Title VII, a person "has engaged in protected activity" if she has done any of the following:

> (1) "opposed any practice made an unlawful employment practice by this subchapter," or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

*Id.* at 427-28 (quoting 42 U.S.C. § 2000e-3(a)). In this case, Flander does not allege that she engaged in any protected activity. For that reason, she has failed to state a claim for retaliation under Title VII. *See Hernandez*, 670 F.3d at 657; *Byers*, 209 F.3d at 427.

It is clear that Plaintiff has failed to state any claim for relief in her Complaint. Indeed, Plaintiff has not even pleaded facts which, taken as true, show that Dyck conspired against her; that Dyck broke any laws; that Dyck initiated or otherwise engaged in any background checks or fingerprint checks; or that Dyck was aware of the results of any background or fingerprint checks. Instead, Plaintiff's allegations show that Dyck's participation was limited to basic administrative tasks, such as the following:

> (i) Defendant [Dyck] arranged an interview with JPMC; (ii) Defendant sent an email regarding a proposed start date at JPMC to Plaintiff - pending JPMC paperwork approval; (iii) Defendant sent an email to Plaintiff, which stated if her background or fingerprints did not come back clean, it was not in Defendant's control regarding Plaintiff's employment; and (iv) finally, an email was forwarded from Defendant to Plaintiff stating that JPMC could not clear Plaintiff for employment until after the outcome of Plaintiff's criminal "court date."

(Dyck's Motion at 9-10). In her Complaint, Plaintiff quotes Dyck as stating that she did not know the results of JPMC's background check, as follows:

> JPMC will not divulge personal or secure information regarding your background to us, so therefore we cannot inquire about the nature of the outcome they are requesting from you.

(Complaint at 4). Further, nothing in the Complaint establishes that Dyck had any authority or influence on JPMC's decision-making process. Instead, it is clear that JPMC and Sykes engaged in a hiring process far more extensive than anything Dyck attempted. (*See id.*). In this case, then, while giving deference to her *pro se* status, it remains clear that "Plaintiff has not alleged any conduct by Defendant that is objectively unreasonable or even remotely unlawful." (*See* Dyck's Motion at 10). As a result, Dyck's motion should be granted, and Plaintiff's claims should be dismissed, for failure to state a claim under Rule 12(b)(6).

*Dismissal under § 1915*

Finally, the court finds that this lawsuit should also be dismissed, with prejudice,[9] under 28 U.S.C. § 1915. Under that statute, which applies to proceedings *in forma pauperis*, a court may dismiss a case at any time if it determines that the action (i) "is frivolous or malicious"; or (ii) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B). In this case, for the same reasons that Plaintiff has failed to state a claim against Robyn Dyck, she has stated no claim against Kforce, JP Morgan Chase, or Jim Sykes. For instance, Plaintiff cannot state a claim against any Defendant under § 1983 because none is a state actor, or engaged in conduct that is attributable to the state. *See Wyatt*, 504 U.S. at 161-62; *Doe*, 675 F.3d at 886. And, because Flander has not shown that Defendants' conduct may have been motivated by her gender or her membership in any other "protected class," Plaintiff has not stated a claim for conspiracy under § 1985 or § 1986, or for sex discrimination under Title VII. *See Bray*, 506 U.S. at 267-68; *Alvarado*, 492 F.3d at 611; *Bryan*, 213 F.3d at 276. Finally, Plaintiff has failed to allege facts which, if true, would support a claim that she "engaged in protected activity," as required for a claim of retaliation under Title VII. *See Hernandez*, 670 F.3d at 657; *Byers*, 209 F.3d at 427. For these reasons, Plaintiff's action appears to be "frivolous," that is, one that "does not have an arguable basis in fact or law." *See Brewster v. Dretke*, 587 F.3d 764, 767 (5th Cir. 2009). As a result, this action be dismissed, with prejudice, under § 1915. *See* 28 U.S.C. § 1915(e)(2)(B)(i), (ii).

In sum, it is recommended that Plaintiff's claims against JPMC and Sykes be dismissed, under Rule 4(m) of the Federal Rules of Civil Procedure, because those parties were never served; that the claims against Kforce be dismissed, under Rule 12(b)(5), for insufficient service of process;

---

[9] Notably, even if a court does not specify that a dismissal under § 1915(e)(2)(B) should be "with prejudice," such dismissals are generally considered to be "with prejudice as to its refiling *in forma pauperis*." *Calton v. Wright*, 2012 WL 3135675, at *3-5 (E.D. Tex. Aug. 1, 2012); *see Marts v. Hines*, 117 F.3d 1504, 1506 (5th Cir. 1997).

17

that the claims against Dyck be dismissed, under Rule 12(b)(6), for failure to state a claim; and that this lawsuit, as a whole, be dismissed, with prejudice, under § 1915.

**Conclusion**

Accordingly, it is **RECOMMENDED** that Plaintiff's motion for summary judgment, motion for a default judgment, and motion to quash be **DENIED**.

It is also **RECOMMENDED** that the motions to dismiss by Defendants Kforce and Dyck be **GRANTED**.

It is further **RECOMMENDED** that this action be **DISMISSED**, with prejudice.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have ten business days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c), General Order 02-13, S.D. Texas. Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208; copies of any such objections shall be delivered to the chambers of Judge Lee H. Rosenthal, Room 11535, and to the chambers of the undersigned, Room 7007.

**SIGNED** at Houston, Texas, this 1st day of November, 2012.

**MARY MILLOY**
**UNITED STATES MAGISTRATE JUDGE**